CASE 4—PETITION EQUITY—SEPTEMBER 29.

# Hall vs. Hiles.

APPEAL FROM SCOTT CIRCUIT COURT.

As, since the legal tender enactment, gold, silver, &c., and legal tender notes of the United States, have different marketable values, contracts to pay in gold or silver, &c., should be specifically enforced by the courts.

M. POLK,                                    For Appellant,

CITED—

2 *Duvall*, 20 ; *Griswold vs. Hepburn.*

MILTON STEVENSON,                            For Appellee,

CITED—

*U. S. Statutes at Large, pp.* 345, 678, 710, 711, 820.

Hall vs. Hiles.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

December 11th, 1862, Hall sold Hiles twenty acres of land, at the price of three hundred and fifty-six dollars and forty cents, to be paid December 25th, 1863, in "*gold, silver, or in Kentucky specie-paying bankable paper;*" and on this payment, Hall was to make him a deed. Hiles and Hall afterwards had some difficulty as to the currency in which the payment was to be made—Hiles insisting that the United States treasury notes declared to be a legal tender by the act of Congress of February 25th, 1862, should be received, and Hall insisting on the payment according to the written contract. Some ineffectual attempts were then made to cancel the contract; but it seems never in fact to have been rescinded, when, on April 19th, 1864, Hiles, by his agent, seems to have tendered three hundred and sixty-five dollars in said treasury notes to Hall, which he refused to receive; and Hiles, on the same day, brought this suit to have a specific execution of the contract, asking the court to compel Hall to receive said tender, and to make him a deed to the land.

Hall, in his response, offers to make the deed on the payment being made in the funds specified, or else offers to rescind the contract.

The court adjudged that the tender as made was good, ordered Hall to receive it, and to make the deed, from which he has appealed.

This court has heretofore adjudged, that when, for a valuable consideration, since the act of Congress of February 25th, 1862, declaring treasury notes lawful money and a legal tender, a party undertakes to pay gold and silver, he should be compelled to perform the agreement. If it be conceded, which a majority of this court, in *Griswold vs. Hepburn*, denied, that Congress could make treasury notes a legal tender, yet, after said enactment, and

when there was a difference in the marketable value of gold and silver and specie-paying bank paper, a party to avail himself of this difference in the market value, and to obtain property at a reduced value, undertakes to pay in a particular fund, equity and good conscience requires that he should perform his undertaking. If one kind of lawful money be really of greater market value than another, neither law nor public policy prohibits a party from undertaking to pay in the more valuable kind; and when, upon valuable consideration, a party does thus promise, neither law nor justice permits the courts to release him from this obligation, and at the same time to keep the consideration for such promise.

It is not now intended to say that the United States treasury notes are a legal tender—indeed that question is not involved in this case; but if they were, there is a clear distinction between this and that class of cases in which the obligor promised to pay gold and silver previous to said enactment, because only gold and silver was then known to the laws as a legal tender; and such obligation was of the exact legal import as an obligation to pay the given number of dollars without specifying that it was to be in gold and silver. As the law then was, nothing but gold and silver coin would discharge an obligation to pay dollars, and there then being no difference in the marketable value of lawful money, there could be no special consideration to pay one kind of lawful money rather than another.

But since this legal tender enactment there has been a well-defined marketable value to each, in which specie has rated much the more valuable. Then, if a party, since said enactment, in order to avail himself of the benefit of this difference, and the probable advantage of the fluctuations of the market in the meantime, should

agree to pay in a particular kind of lawful money, it would be unjust and unconscientious to permit him to derive the benefit from such undertaking, yet to escape from its obligations. Nothing in this opinion is intended to unsettle the decision of a majority of this court in *Griswold vs. Hepburn*, as that question is not involved.

Hall has the legal title and a lien upon the land for the payment of the purchase price. The vendee has no right to demand a deed until he performs his agreement, or is ready to do so, and has therefore manifested no right of action. But as he is now in court, Hall should be permitted to amend his answer, make it a cross-petition, should he within reasonable time seek to do so, obtain a judgment for the specific performance of the contract by the vendee, and assert his lien, and subject the land to his judgment.

The judgment is therefore reversed, with directions for further proceedings in accordance herewith.