———, *for appellant.*

———, *for appellee.*

---

### SAMUEL HIATT *v.* T. F. TAYLOR ET AL.

**Set-Off and Counterclaim—What Constitutes Counterclaim.**

An answer which does not ask for a judgment, but claims a credit, and is directly connected with the transaction forming the basis of the petition, must be regarded as a counterclaim.

**Contracts—Obligations Payable in Gold or Its Equivalent.**

Where an obligation undertaken at a time when there was a difference payable in the value of gold and paper currency, provided for payment in gold, the obligee may enforce payment in gold or its equivalent in value of paper currency.

APPEAL FROM LOUISVILLE CHANCERY COURT.

April 15, 1874.

OPINION BY JUDGE PRYOR:

We think the answers of each of the defendants might be regarded as good after judgment. The first, Taylor, it is true, asks for no judgment, but claims a credit by reason of the sale of the

railway stock against his consent; and if so sold, and being directly connected with the transaction out of which the claim constituting the basis of appellant's action originated, it must be regarded as a counterclaim. If the property was wrongfully sold, the defendants could elect to sue for its value upon the implied promise, or bring their action of trover and conversion. Although no counterclaim might be made good by the proof, and although Burnside may have failed to allege the connection of his claim with that of the plaintiff, still, if the evidence shows that the one originated from the other, the court, when there had been no demurrer, would sustain the judgment on the counterclaim, if otherwise proper.

We have read the testimony in the case carefully; and, containing as it does some remarkable features, still there is but little difficulty in determining the rights of the parties. The pledge of the railway stock was made to secure the appellant in his loan to the appellees of seven thousand dollars in gold, with a power of attorney in blank, signed by the appellees, authorizing the appellant to dispose of it. The appellees were in default in making their payment as they had agreed; and no sale was made of the pledged stock by the appellant, until more than one year after the failure of appellees to pay. They knew the necessities of Hiatt for money, and were both morally and legally bound to pay him. No offer was made to pay, or any ability on their part shown to comply with their agreement, and no alternative left appellant but to place this stock on the market. He had notified the appellees of his intention to do so, as appears from his own testimony as well as that of Taylor, the latter insisting, however, according to his statement, that he must have dollar for dollar. The utmost vigilance was used by appellant in order to obtain the highest market price for it, and he finally sold the stock to Del Beechim for twenty-five cents on the dollar. The firm of Burnside, Taylor & Co., or its members, knew of the sale; Taylor was informed of it on the very day it took place. The appellant was so careful of the rights of the appellees, as to obtain from the purchaser his obligation to permit its redemption at any time within six months from the sale, at the same price for which it was sold. This was in writing, of the execution of which Taylor was also informed, and said it was all right. Meddis also approved the purchase, and informed him of the intention of the firm to redeem. We have no doubt the appellees knew all

43

about the transaction, and would have redeemed the stock if its marketable value had been greater than the price for which it was sold. It was only a conditional sale at best, and it is not pretended that the appellees were ignorant of the right to redeem from the date of the sale until this right expired; and what is remarkable looking to the conduct of business men, is, that if their stock was so valuable, they did not even attempt to redeem it. It cannot be said that their failure to do so resulted from an agreement made with the appellant after this sale, by which, in consideration of this alleged conversation by him, he agreed to credit the claim he held against appellees for $5,000, the full amount for which the certificates called, and also agreed that he was indebted to the firm in the sum of $1,900. It is now maintained by appellees that this inaction on their part originated from a full, fair and final settlement between the parties, consented to by both, by which they were to have the credit for the $5,000 and $1,900 besides. Still no credit is given, no note executed for the $1,900; and what is equally strange, the appellant is permitted to retain the evidence of the indebtedness. Here was a settlement made, as is alleged, by the clerk, with pen, ink, and paper, evidencing important business transactions, involving large sums of money, and not the mark of a pen appearing as evidence of what really transpired. What is more remarkable still in this case, is that in the sworn answers of both the defendants, no such agreement or settlement is relied on; and the only defense consists in the alleged tort in converting this stock by the appellant to his own use. The witnesses for appellees seem to have known much more of the defense than appellees did, a fact that is easily accounted for after a careful examination of the facts embodied in this record.

From the testimony of appellees, we are asked to conclude that appellant, although he had received only $1,250 for this stock, voluntarily agreed, when it was of no greater value, to credit the note by $5,000; or that he agreed to credit the note by the amount for the reason that he could redeem, at that time, the stock for what he had sold it, and then sell it for the amount for which he had agreed to credit appellees, $5,000. This last conclusion would be than twenty-five or thirty cents to the dollar. The other position is equally so, for the reason that appellant could have then redeemed absurd, as the whole proof shows that it was not then worth more

the stock for what he sold it, delivered it over to Taylor, and thus saved his five thousand dollars. The whole theory of appellees is inconsistent with reason, with all the facts of the case, and more inconsistent with appellees' own defense, than either. The appellant is entitled to a judgment for his money on the testimony of appellees alone. By the terms of the contract he had delivered and loaned to the appellees seven thousand dollars in gold. They were to repay the loan in like coin as well as the interest. There was then (in 1867) a great difference between the value of gold and paper currency. The parties had the right to make such a contract; and a court of equity will enforce it by requiring, if the gold is not delivered, the payment of its equivalent in legal tender currency. The case should go to the court with directions to ascertain the gold value of the currency paid, and the gold value of the money collected on the notes of Meddis at the time each was paid or collected; then credit the amount of the value of each payment in gold at the time it was paid, and the balance, with the interest, will be the amount due appellant in gold; then ascertain how many dollars in legal tender paper, at the date of the judgment, the gold will produce, and a judgment for this amount will determine the rights of the parties. Hall v. Hiles, 2 Bush 532; Trebilcock v. Wilson et ux., 12 Wallace 687.

The judgment of the court below is reversed and cause remanded for further proceedings consistent with this opinion.

*Fleming, Muir Byier, P. Davis,* for appellant.

*H. M. Lane,* for appellees.